Filed 3/16/23  In re Camila M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re CAMILA M., a Person Coming Under the Juvenile Court Law. | B316683 (Los Angeles County Super. Ct. No. 21CCJP03887A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BENJAMIN M. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Judge Pro Tempore. Affirmed.

Richard B. Lennon and Anne E. Fragasso, under appointments by the Court of Appeal, for Defendant and Appellant Benjamin M.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant Rachel M.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Rachel M. (mother) and Benjamin M. (father) challenge the substantiality of the evidence to support the juvenile court's October 2021 assertion of jurisdiction over their then-newborn child, Camila M. Although moot, we exercise our discretion to reach the parents' challenge but determine that it lacks merit. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Camila M. was born to mother and father in mid-July 2021. At the time of the birth, both Camila and mother tested positive for marijuana.

Mother is a long-time, daily smoker of marijuana. She started smoking when she was 13 years old and in the 7th grade but self-identifies as a "recreational" smoker. When she became pregnant with Camila, she continued her daily use through

smoking and "bong hits." Although mother told her obstetrician that she was not experiencing any pregnancy symptoms or pain, once this dependency case started, mother started saying that she had been smoking to alleviate pregnancy-associated cramping and low back pain. She had continued smoking over her obstetrician's express advisement that she needed to stop smoking. Father knew mother was smoking marijuana while pregnant.

Father is also a daily smoker of marijuana. He suffers from Crohn's disease and thus has a medicinal reason for his daily use.

## II.    Procedural Background

On August 19, 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Camila on the grounds that (1) Camila's positive test for marijuana at the time of birth was due to the "unreasonable acts by . . . mother[ that] plac[ed] the child at risk of physical harm," and (2) mother's and father's status as current abusers of marijuana renders them "incapable of providing regular care" for Camila, who is "of such a young age as to require constant care and supervision." As to all allegations, the parents' conduct "endangers" Camila's "physical health and safety and places [her] at risk of serious physical harm, damage, and danger," thereby warranting the exercise of dependency jurisdiction under Welfare and Institutions Code section 300, subdivision (b).[1]

Mother started drug testing. Although her initial tests were positive for marijuana, she returned four negative tests in September 2021. Father returned two negative tests and one

_____

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

positive test in September 2021.  Although father indicated he only smokes outside, the interior of the parents' house smelled of marijuana.

On October 5, 2021, the juvenile court held a jurisdictional hearing.  The court sustained all allegations as true.  The court noted that the parents' recurrent, daily use was not "recreational" and thus was indicative of a substance abuse "problem."  The court further explained that marijuana "is a mind altering substance" that interferes with a person being "mentally there" and that a child as young as Camila "needs parents that are mentally there when they're taking care of their child," such that the parents' use in this case places Camila at risk of harm.  The court denied the Department's request to declare Camila a "dependent" and place her under the court's formal supervision; instead, the court invoked its authority under section 360, subdivision (b) to informally supervise the child as long as the parents refrained from their marijuana use and agreed to test.

Both parents filed timely appeals.  Father indicated on his notice of appeal that he was also appealing from "the court's order to proceed pursuant to [Welfare and Institutions Code section] 360[, subdivision ](b)."  However, aside from a conclusory assertion that the dispositional order must be reversed if there is no substantial evidence to support the jurisdictional finding, only the latter is argued in the briefs on appeal.  We treat the case as involving only the portion of the judgment so attacked.

## DISCUSSION

Mother and father argue that the juvenile court's jurisdictional findings are not supported by the record.

As a threshold matter, the Department argues that the parents' appeals are moot because Camila was placed on informal

supervision in October 2021 and the juvenile court's jurisdiction was terminated when the Department did not institute further proceedings during the period of informal supervision.[2]  The Department is correct as the parents can point to no court order showing them to be currently under the court's supervision, much less jurisdiction.  Thus, these appeals would seem to be moot under our Supreme Court's latest pronouncement regarding the mootness doctrine in juvenile dependency cases because there is no extant court order that "continues to impact the parents" and because the stigma of the jurisdictional finding is not enough, by itself, to avoid mootness.  (*In re D.P.* (2023) 14 Cal.5th 266, 276-278.)  However, we have the discretion to reach the merits of the parents' challenge—and are encouraged to exercise that discretion—in situations, such as this one, where the parents are challenging a jurisdictional finding that "can be considered by the Department in determining whether to file a dependency petition or by a juvenile court in subsequent dependency proceedings." (*Id.* at p. 285.)  We will accordingly exercise that discretion here.

A juvenile court may exert dependency jurisdiction over a child if, as is pertinent here, the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."  (§ 300, subd. (b)(1).)  We review a juvenile court's jurisdictional findings for substantial evidence, asking

---

[2]     The juvenile court has no authority to take any further role in overseeing the services or the family unless the matter is brought back before the court pursuant to section 360, subdivision (c). (See §§ 360, subds. (b), (c), 301; *In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260-1261.)

whether the record—when viewed as a whole and drawing all inferences in support of the court's findings—contains ""sufficient facts to support [its jurisdictional] findings."" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

## I.     Camila's positive marijuana test at birth

Substantial evidence supports the juvenile court's jurisdictional finding that mother's use of marijuana while pregnant placed Camila at substantial risk of suffering serious physical harm or illness.  A child's ingestion of illegal drugs constitutes "serious physical harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825), and a mother's use of "dangerous drugs" biologically causes a child to ingest such drugs and, as a result, places the fetus at risk of serious physical harm (*In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900).  Here, it is undisputed that mother continued her daily use of marijuana while pregnant with Camila, which had the effect of forcing Camila to ingest that marijuana every day of her gestation and thereby placed her at serious risk of serious physical injury.

The parents resist this conclusion with two arguments.

First, the parents argue that Camila was "physically fine" at the time of her birth, so jurisdiction is inappropriate under a "no harm, no foul" rationale.  We disagree.  It is well settled that "'[a] juvenile court 'need not wait until a child is seriously abused or injured to assume jurisdiction . . . .'" (*In re L.W.* (2019) 32 Cal.App.5th 840, 849, quoting *In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

Second, the parents argue that *In re J.A.* (2020) 47 Cal.App.5th 1036 (*J.A.*) dictates a result in their favor.  *J.A.* held that a mother's use of "edible marijuana" gummies during pregnancy "to address her pregnancy symptoms" did not

constitute substantial evidence supporting the assertion of dependency jurisdiction because, in the court's view, marijuana is not a "'dangerous drug'"; because the mother's use did not cause the newborn's older sibling in that case to suffer "developmental[] delay[s]"; and because the mother ceased using marijuana after being told to stop. (*Id.* at pp. 1047-1049.) *J.A.* does not dictate a result in the parents' favor. To begin, *J.A.* is distinguishable. This is not a case where the mother started using marijuana to address pregnancy symptoms. Rather, this is a case where mother was a daily smoker of marijuana for years prior to pregnancy and merely continued her use while pregnant, and later started to say that her continued marijuana use was meant to alleviate one (and later two) of her pregnancy symptoms. Further, mother did not stop using marijuana during the pregnancy despite being told to do so. Moreover, to the extent that *J.A.* holds that marijuana is not a dangerous drug when used during pregnancy or that jurisdiction is inappropriate absent showing of a specific injury to the fetus, we disagree with *J.A.* As the Department's reports in this case relayed to the juvenile court, both the United States Department of Health and Human Services and the American Academy of Pediatrics have issued warnings that the use of marijuana during pregnancy "can be harmful to a baby's health and cause many serious problems, including stillbirth, preterm birth, and growth and development[al] issues"[3]; these warnings belie the notion that

---

[3] The U.S. Department of Health and Human Services warning is archived at <https://perma.cc/BNT9-BU6Q> (as of Mar. 6, 2023), and the American Academy of Pediatrics warning is archived at <https://perma.cc/5TS4-H6XM> (as of Mar. 6, 2023). We may take judicial notice of the issuance of their

marijuana is not a "dangerous drug" vis-à-vis the fetus. Requiring a specific injury also seems to adopt a "no harm, no foul" rule that, as noted above, contradicts a central tenet of juvenile dependency law. If, as is the case, a mother's use of alcohol and cigarettes during pregnancy places a fetus at risk (see *Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 498-499 [alcohol use during pregnancy]; *K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1391-1392 [nicotine addiction and cigarette use during pregnancy]), we see no logical basis for concluding that her use of marijuana—particularly when ingested by smoking and "bong hits"—is any less risky.

## II. Parents' Substance Abuse

Substantial evidence also supports the juvenile court's jurisdictional findings that mother and father abused marijuana and that their abuse placed Camila at substantial risk of suffering serious physical harm or illness. Substantial evidence supports the court's finding of drug abuse because (1) mother and father's use of marijuana was longstanding (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [noting parent's "long history of methamphetamine use"]), and (2) the parents did not *halt* their use—either mother's direct ingestion or father's continued smoking near mother while she was pregnant—despite being warned that use during pregnancy endangered the fetus, and the parents' inability to stop presages their continued use while caring for Camila as an infant. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."]; *Troy D.*, *supra*, 215 Cal.App.3d at pp. 899-900 ["prenatal use of dangerous drugs by a mother is probative of

---

warnings, albeit not the hearsay of the substance of those warnings. (Evid. Code, §§ 459, 452.)

8

future child neglect"].)  Substantial evidence also supports the court's finding that the parents' drug abuse poses a risk to Camila moving forward.  Risk to a child from substance abuse can be established by (1) proof of "'an identified, specific hazard in the child's environment,'" or (2) proof that the child is of "tender years," in which case "the finding of substance abuse is prima facie evidence of the inability of [the] parent . . . to provide regular care resulting in a substantial risk of physical harm."  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766-767 (*Drake M.*).)  Because Camila is not yet six years old (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219), she is a child of tender years and the tender years presumption applies and satisfies the Department's burden.  Although the continued validity of the tender years presumption is before our Supreme Court in *In re N.R.,* review granted August 24, 2022, S274943, it is still the law today. What is more, father is continuing to smoke marijuana, and second-hand marijuana smoke poses a risk to children.  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452.)

The parents resist this conclusion with what boil down to two groups of arguments.

First, they argue that they are merely marijuana *users* (not marijuana *abusers*) under the definition of "substance abuse" set forth in *Drake M., supra,* 211 Cal.App.4th at pp. 766-767.  *Drake M.* held that a parent engages in "substance *abuse*" only if (1) a medical professional has diagnosed the parent as having a substance abuse problem, or (2) the parent's substance abuse meets the definition of a substance abuse problem as defined by the Diagnostic and Statistical Manual of Medical Disorders (DSM).  (*Id.* at p. 766, italics added.)  As have several other courts, we decline to follow *Drake M.* to the extent it purports to

require such a showing in all cases. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *Christopher R., supra*, 225 Cal.App.4th at p. 1218; *In re K.B.* (2021) 59 Cal.App.5th 593, 601.) And even if we were to follow the path blazed by *Drake M.* by looking to the DSM, substantial evidence supports a finding of "substance abuse" under the most recent, fifth edition of the DSM. That edition replaced the definition of "substance abuse" with the broader classification of "substance use disorder," which is met when two or three of 11 enumerated factors exist (*Christopher R.*, at p. 1218, fn. 6), and those factors include (1) taking the substance in larger amounts or for longer than a person is meant to, (2) wanting to cut down or stop using the substance but not managing to, and (3) using substances, even if it puts a person or others in danger. (Elizabeth Hartney, *DSM 5 Criteria for Substance Use Disorders*, Verywell Mind (Aug. 25, 2022), archived at <https://perma.cc/8DY3-MKU4> [as of Mar. 6, 2023].) Here, the parents' use of marijuana is longstanding and continued despite the risk it posed to Camila. Although the parents claim to have held the belief that there was nothing wrong with ingesting marijuana while expecting a child, they were nevertheless told by a medical professional to stop using and refused to do so. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].)

Second, the parents argue that drug use is not enough by itself to justify dependency jurisdiction; that a showing of risk of harm to the child is needed; and that that showing of risk is missing here. The parents' first two points are correct, but their last point is incorrect. "[D]rug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in

dependency proceedings . . ." because there must be a link between that drug abuse and risk to the child. (*L.W.*, *supra*, 32 Cal.App.5th at p. 849.)  But, as explained above, there is sufficient evidence of that link here.  The parents argue there is no risk because the family home is well stocked with food and baby supplies and because Camila has not suffered any harm while in parents' care.  However, these considerations do not rebut the tender years presumption because, if the absence of injury were enough, proof of a specific, identified hazard would always be required and the tender years presumption would cease to exist; that is not the law.  The parents next argue that mother had four negative drug tests in September 2021.  While mother's efforts at sobriety are encouraging and praiseworthy, they come after years of drug use.  As did the juvenile court here, courts have long concluded that the risk arising from longstanding use is usually not ameliorated by a short, recent period of sobriety.  (E.g., *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days insufficient to convince juvenile court that a relapse would not occur]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [relapse following 300 days of sobriety].)  Father is in the same situation but goes on to insist that the "science" does not support the notion that mother's marijuana use will transmit the drug to Camila through breastmilk, despite the above-referenced warnings that indicate just such a danger.  The parents lastly cite *In re B.T.* (2011) 193 Cal.App.4th 685, 691 in support of their argument that there is no risk.  There, however, the mother's "regular[]" drinking of beer did not place her infant child at risk when mother was able to stop drinking "cold turkey" for a period of more than two months, which meant she was not "in the grip of a serious addiction."  (*Id.*

11

at pp. 693-694.)  Here, however, mother and father have been ingesting marijuana for years, continued to do so despite the risk it posed to Camila during mother's pregnancy, and have not shown a sufficient period of sobriety to rebut the tender years presumption in this case.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ